## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

Amanda R. Bujnoch-Bowlin      )
      )
                Plaintiff,    )
v.      )      Case No. _____
      )
Officer Carter Truax  (Badge# 5635)   )
(Officer with KCPD)   )
<u>Serve at:</u>   )
7601 Prospect Ave.   )
Kansas City, MO 64132   )
   )
And   )
   )
Officer Hall (Badge# 5651)   )
(Officer with KCPD)   )
<u>Serve at:</u>   )
7601 Prospect Ave.   )
Kansas City, MO 64132   )
   )
And   )
   )
Sgt B. Nelson (Badge#5304)   )
(Sergeant with KCPD)   )
<u>Serve at:</u>   )
7601 Prospect Ave.   )
Kansas City, MO 64132   )
   )
And   )
   )
Detective Andrew Keller (Badge# 5576)   )
Detective with KCPD   )
<u>Serve at:</u>   )
7601 Prospect Ave.   )
Kansas City, MO 64132   )
   )
And   )
   )
Tom Whitaker, President of the Kansas   )
City Board of Police Commissioners, in   )
Her individual and official capacity,   )
   )
And   )
   )

**Madeline Romious, Vice President of the**  )
**Kansas City, Missouri Board of Police**  )
**Commissioners, in his individual and**  )
**official capacity,**  )
)
**And**  )
)
**Scott Boswell Sr., Treasurer of the**  )
**Kansas City Board of Police**  )
**Commissioners, in her individual and**  )
**official capacity,**  )
)
**And**  )
)
**Heather Hall, Member, Kansas City**  )
**Board of Police Commissioners in her**  )
**Individual and official capacity**  )
)
**And**  )
)
**Mayor Quinton Lucas, Member, Kansas**  )
**City Board of Police Commissioners, in**  )
**his individual and official capacity,**  )
)
**\*NOTE- Defendants Lucas, Romious,**  )
**Whittaker, and Boswell Sr. are being**  )
**sued in their individual and official**  )
**capacities as members of the Kansas**  )
**City, Missouri Board of Police**  )
**Commissioners**  )
)
                           **Defendants**  )

## PLAINTIFF'S COMPLAINT/PETITION FOR DAMAGES

COMES NOW Plaintiff Amanda Bujnoch by and through her Legal Counsel, The Law

Offices of Edward A. Stump, LLC, and for her Complaint/Petition against the Defendants states

the following. This is a civil rights action being brought pursuant to 42 U.S.C. 1983 seeking

damages from the Defendants in both their individual and official capacities for the deprivation of

the Plaintiff's Civil Rights guaranteed by the Fourth and Fourteenth amendments to the United

States Constitution and pendent state law claims.

**PARTIES**

1. Plaintiff Amanda Bujnoch (hereinafter Bujnoch or Plaintiff) is a citizen and resident over the age of 21 (DOB 9/15/1989) of Jackson County, Missouri, residing at 201 S. Pleasant (Apt. #304), Independence MO. 64050 within the geographical jurisdiction of this Court.

2. Defendants Tom Whitaker, Madeline Romious, Scott Boswell, Heather Hall and Mayor Quentin Lucas are the members of the Kansas City Board of Police Commissioners (the said Defendants are hereinafter collectively referred to as the Board for ease of reference). The Kansas City Board of Police Commissioners is an agency of the State of Missouri and/or the City of Kansas City Missouri which was established pursuant to Section 84.350 RSMo. The Board operates within the geographical jurisdiction of this Court located at 1125 Locust Street, Kansas City, MO. 64106. The Board operates, supervises and controls the Kansas City, Missouri Police Department and all of its departments as mandated by Missouri Statute (RSMo § 84.345). The Board is also responsible for the supervision of the Chief and all, Captains, Sergeants, Detectives, and officers, administrators, clerical, and ministerial staff of the Kansas City Missouri Police Department ("KCPD") and for overseeing the implementation and execution of the KCPD's policies, procedures, and customs. The Governor of Missouri, with the consent of the Missouri State Senate, appoints four Kansas City residents to serve on the Kansas City Missouri Board of Police Commissioners. The commissioners serve four-year terms, with one member's term expiring each year. The fifth member of the board is the mayor of Kansas City. The secretary/attorney of the board is appointed by the commissioners and acts as legal consultant. President Tom Whitaker, Vice President Madeline Romious Treasurer Scott Boswell, Member Heather Hall and Member Mayor Quinton Lucas, are duly appointed and acting members and all

part of the Kansas City Board of Police Commissioners.   Tom Whittaker, Quinton Lucas, Scott Boswell, Heather Hall and Madeline Romious are being named as Defendants in this action and being sued in their individual and official capacities as members of the Kansas City, Missouri Board of Police Commissioners, as required by Missouri Law in order to assert a claim against the Kansas City Board of Police Commissioners.

3.   Defendant Carter Truax (Badge# 5635 ) is a citizen and resident of the Western District of Missouri and a Police Officer employed by the Kansas City, Missouri Police Department located within Jackson County, Missouri at 7601 Prospect Ave., Kansas City, MO. 64132 and was at all times relevant hereto employed by the Kansas City, Missouri Police Department (within Kansas City and within Jackson County) and at all times was acting under color of law and on behalf of and with, and or with the authority of the Kansas City, Missouri Police Department and/or the Kansas City Missouri Board Of Police Commissioners and the Board.  Defendant Carter Truax is named as a party to this litigation and is being sued in his individual and official capacities.

4.   Defendant Officer Hall (Badge# 5651) is a citizen and resident of the Western District of Missouri and a Police Officer employed by the Kansas City, Missouri Police Department located within Jackson County, Missouri at 7601 Prospect Avenue, Kansas City, MO. 64132 and was at all times relevant hereto employed by the Kansas City, Missouri Police Department (within Kansas City and within Jackson County) and at all times was acting under color of law and on behalf of and with, and or with the authority of the Kansas City, Missouri Police Department and/or the Kansas City Missouri Board Of Police Commissioners and the Board.  Defendant Hall is named as a party to this litigation and is being sued in his individual and official capacities.

5.   Defendant Sgt. Nelson (Badge# 5304) is a citizen and resident of the Western District

of Missouri and a Police Officer employed by the Kansas City, Missouri Police Department located within Jackson County, Missouri at 7601 Prospect Avenue, Kansas City, MO. 64132 and was at all times relevant hereto employed by the Kansas City, Missouri Police Department (within Kansas City and within Jackson County) and at all times was acting under color of law and on behalf of and with, and or with the authority of the Kansas City, Missouri Police Department and/or the Kansas City Missouri Board Of Police Commissioners and the Board. Defendant Nelson is named as a party to this litigation and is being sued in his individual and official capacities.

6. Defendant Detective Andrew Keller (Badge# 5576) is a citizen and resident of the Western District of Missouri and a Police Officer employed by the Kansas City, Missouri Police Department located within Jackson County, Missouri at 7601 Prospect Avenue, Kansas City, MO. 64132 and was at all times relevant hereto employed by the Kansas City, Missouri Police Department (within Kansas City and within Jackson County) and at all times was acting under color of law and on behalf of and with, and or with the authority of the Kansas City, Missouri Police Department and/or the Kansas City Missouri Board Of Police Commissioners and the Board. Defendant Keller is named as a party to this litigation and is being sued in his individual and official capacities.

7. At all times mentioned herein, each of the Defendants referenced in this complaint were the agents, servants, and employees of the Kansas City Missouri Board of Police Commissioners through the Kansas City Missouri Police Department hereinafter ("KCPD").

### JURISDICTION AND VENUE

8. Jurisdiction is proper to this Court pursuant to 28 U.S.C. §§1331 and 1343.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants are located,

and the events giving rise to Plaintiff's claims occurred, within the boundaries of this judicial district within Jackson County Missouri.

10. At all times pertinent to this Petition, Plaintiff Bujnoch was a citizen and resident of Jackson County Missouri and is currently a resident of Jackson County Missouri.

**AGENCY/RESPONDEAT SUPERIOR/VICARIOUS LIABILITY**

11. At all relevant times, Defendants Scott Boswell, Heather Hall, Tom Whittaker, Quinton Lucas and Madeline Romious, in their respective capacities as members of the Kansas City, Missouri Board of Police Commissioners and the Kansas City, Missouri Board of Police Commissioners were acting by and through their actual and/or ostensible employees and agents, including but not limited to Defendants KCPD Officers Truax, Hall, Nelson, and Keller, in operating the Kansas City Missouri Police Department. Whenever a reference in this Petition is made to any act or transaction by the Board, acting through the Kansas City Missouri Police Department which they exclusively operate, any such allegations shall be deemed to mean that the principals, officers, administrators, sergeants, directors, employees, agents and/or representatives of the Board and Kansas City Missouri Police Department committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of the Board, by and through Kansas City Missouri Police Department while actively engaged in the scope of their duties. This includes but is not limited to the wrongful acts taken by Defendants Officers Truax, Hall, Nelson and Keller.

12. At all times relevant to this Petition, Individual Defendants Truax, Hall, Nelson and Keller, were acting within the course and scope of their employment and/or agency as a police officer and employee of the other Defendants and other officers of the KCPD/ Kansas City Board of Police Commissioner/ Kansas City Missouri Police Department and in pursuit of

furthering the interests of the Kansas City Board Of Police Commissioners and particularly the Kansas City Missouri Police Department.

13. Defendants Truax, Hall, Nelson, Keller and other officers employed by the KCPD who interacted with Plaintiff committed their acts or omissions towards Plaintiff in the scope and course of employment. Those acts were systemic within the KCPD at all levels such that they were done by Defendants and their agents and employees to further the business interests of the Defendants, the KCPD and the Board of Police Commissioners under the general authority and direction of their agents and staff of the Board of Police Commissioners of Kansas City, MO. Those acts arose from the performance by Defendants Board and Members of the Board and their agents and employees and other known officers supervisors, or unknown officers at this time of their duties for the KCPD which interacted with Plaintiff. The acts and/or omissions of Defendants Truax, Hall, Nelson, Keller are therefore imputed to Defendant Kansas City Board of Police Commissioners as a matter of law, and therefore they are vicariously liable for all such acts and/or omissions of their employees/agents/officers.

14. In the Alternative the actions of Defendants Truax, Hall, Nelson and Keller with respect to their wrongful/unlawful detention and arrest including but not limited, wrongful/unlawful search and seizure, and wrongful/unlawful seizure of property(killing of dog) and negligent destruction of property killing of Plaintiff Certified Service/Thereapy Dog as alleged herein were committed by Defendants Truax, Hall, Nelson, Keller, acting within the scope of their statutory authority of the Kansas City Police Department as set forth in Section 84.710 RSMo in that Defendants Officers Truax, Hall, Nelson and Keller were on duty and in uniform and alerted KCPD officers/detectives that they supposedly had a valid search

warrant and claimed that they had proper authority to execute a search warrant on the residence located at 4003 East 107th Street, Kansas City, MO. 64137. There was no argument or issue made by any KCPD employees/officers/sergeants/and supervisors as to the acts and omissions by Defendants Truax, Hall, Nelson and Keller.

15. Defendant Officers Truax, Hall, Nelson and Keller are not entitled to Official Immunity nor relief under the Public Duty Doctrine as they were committing intentional acts and acting in bad faith and with malice as they stopped, detained, and arrested Plaintiff without any evidence of the commission of a crime. When Defendants committed their wrongful and unlawful acts and omissions they owed a Duty to Individual Plaintiff Amanda Bujnoch, not the community/general public as a whole. Plaintiff had a special, direct and distinctive interest when she(her person) and her residence were illegally and wrongfully and unlawfully searched where she was unlawfully and wrongfully arrested/detained, the deadly force used in the Search and Seizure of her Certified Service Dog "Kilo" being unlawfully and wrongfully shot and left to die, all of this was reasonably foreseeable as a result of the public employees' breaches of their duties.

16. The Doctrine of Sovereign Immunity does not afford protection because Defendants and or the Kansas City, Missouri Board of Police Commissioners have procured applicable Liability Insurance or established a self-insurance plan, that insured actions by their agents and Officers and further, the acts were by the Department were done out of a Proprietary Function for the special benefit and or profit of the municipality as a corporate entity and not as a governmental function for the common good of all and at times in violation of their own department policies with the intent to intimidate and harass. See Liability Insurance Exception RSMo 537.600 Section 2.

## Facts Common to All Counts

17. Plaintiff is female citizen who is over the age of 18 and is a resident of Kansas City, Jackson County, Missouri.

18. Defendants Truax, Hall, Nelson, and Keller were all Kansas City, Missouri Police Officers employed by the Kansas City, Missouri Police Department in October of 2022, which is administered by the Kansas City, Missouri Board of Police Commissioners.

19. Defendants Whitaker, Romious, Boswell, Hall and Lucas are the members of the Board of the Kansas City, Missouri Board of Police Commissioners and are being sued in their respective official, representative capacities.

20. At all relevant times, Defendant Kansas City Board of Police Commissioners were acting by and through their actual and/or ostensible employees and agents, including but not limited to all of the Individual Defendant KCPD officers, in operating the Kansas City Missouri Police Department. Whenever reference in this Petition is made to any act or transaction by Defendant Kansas City Missouri Board of Police Commissioners and the Kansas City Missouri Police Department, which they exclusively operate, any such allegations shall be deemed to refer to and encompass the principals, officers, administrators, sergeants, directors, employees, agents and/or representatives of such Defendant Kansas City Board of Police Commissioners and Kansas City Missouri Police Department.

21. At all relevant times, The Individual Defendant KCPD Officers listed in this Petition were acting within the course and scope of their employment and/or agency as police officers and employees of the KCPD/ Kansas City Board Of Police Commissioner/ Kansas City

Missouri Police Department and in pursuit of furthering the interests of Defendant Kansas City Board Of Police Commissioners.

22. All known officers or unknown officers at this time for the KCPD which interacted with Plaintiff committed their acts or omissions towards Plaintiff in the scope and course of employment and it was systemic within the KCPD Department involving all levels such that they were done by Defendants and their agents and employees to further the business interests of The KCPD and the Board of Police Commissioners and under the general authority and direction of their agents and staff of Board of Police Commissioners of Kansas City, MO. Such acts arose from the performance of Defendants and their agents and employees and other known officers or unknown officers at this time for the KCPD which interacted with Plaintiff. The acts and/or omissions of the Individual Defendants (KCPD agents/officers/detectives) are therefore imputed to Defendant Kansas City Board of Police Commissioners as a matter of law, and therefore they are vicariously liable for all such acts and/or omissions of their employees/agents/officers.

23. The actions of the Defendants, as alleged herein, were intentional and violated the Plaintiff's rights under the US Constitution and clearly established law.

24. On October 16th, 2022 at 9:08am KCPD Officers arrived near the address of 4003 107th Street, KC, MO. 64137 as part of an investigation into alleged suspicious activities and possible property crimes including the investigation into the theft of a vehicle and as part of their investigation the officers at the scene went to the door of the house at the location in order to make contact with the occupants (See Exhibit #1 KCPD Police Report #KC22070213 dealing with Initial Contact and Surveillance)

25. The officers had set up down the street after getting a Crime Stoppers Call looking for astolen vehicle and did surveillance on the neighborhood and home. (See Exhibit #1)

26. On October 16, 2022, at approximately 9:30am Plaintiff was at her then home being the residence located at 4003 107th Street, KC, MO. 64137, when several KCPD Officers arrived to ask her questions. (See Exhibit #1 KCPD Police Report #KC22070213 dealing with Initial Contact and Surveillance)

27. Plaintiff at the time had roommates out of financial necessity by the names of Austin Hirst, Lela Vance (a Live in care worker for Plaintiff) and Ashley Humphreys and the roommates were acquaintances, not good friends. (See Exhibit #2 KCPD Police Report # KC22070358)

28. The KCPD officers Dorr and Warren along with two officers whom Plaintiff believes were Defendants Truax and Keller identified three of the four occupants living at the home on 10/16/22 as being  Amanda Bujnoch-Bowlin, Austin Hirst and Lela Vance who were all present when the KCPD officers were conducting their investigation at the residence. Further both Hirst and Bujnoch stated that the fourth occupant of the home being Ashley Humphreys had just left ten minutes ago and that she was a white blonde haired female. (See Exhibit #1)

29. The officers on 10/16/22 through their surveillance and contact with the occupants of the residence at 4003 107th Street, KC, MO observed that the occupants had pets which included a service dog that belonged to Plaintiff Bujnoch and which was always at her side.

30. Later in the day at 11:45pm on 10/16/22 KCPD Officers including Defendants Truax and Keller were alerted to a vehicle that had been stolen being a Ford E250 Econoline van which was alleged later to have been stolen and taken up near the residence of Plaintiff

who believes a friend of Mr. Hirst named Derrick had driven the van into the neighborhood of the Plaintiff. (See Exhibit #2 KCPD Police Report #KC22070358). The van was recovered that evening in the Neighborhood near the house of the Plaintiff.

31. On 10/18/22 the at approximately 1411 hours KCPD Officers and members Team 3, 50 squad and members and Tactical Response Team 2 Squads 30 and 40 (which include all individually named KCPD Officers) arrived at the address of 4003 107th Street, KC, MO., in order to search the premises of possible stolen property. (See Exhibit#3 Supplementary Search Warrant Execution).

32. Prior to the Search on the residence rented by Plaintiff, Defendants Nelson, Keller and Truax conducted a drive by of the residence to gather intelligence and to definitively locate the address they wanted to conduct their search at. (See Exhibit#3)

33. It is alleged by Defendant Truax that he received a copy of the Search Warrant for the Property in question by Defendant Detective Keller and Defendant Sgt. Nelson. Defendant Carter Truax was Team Leader leading the Execution of the Search Warrant having supervising authority over the Search and Seizures. The warrant was allegedly signed by Judge Adam Caine of the Jackson County Circuit Court Div. 11 on 10/18/22 at 1153 hours. (See Exhibit #3)

34. Importantly the Defendants did not provide Plaintiff a copy of any such warrant as described in the previous paragraph signed by Judge Cain at the time alleged.

35. The Plaintiff being on the lease of the premises received an executed Search Warrant with signed return by Detective Keller with a full receipt and inventory of items taken by the Defendant KCPD Officers and the KCPD itself that was left for her on her counter (See

Exhibit #4 pictures of Search Warrant with signed return and inventory on Kitchen Counter).

36. However the Search Warrant and its return and inventory received by Plaintiff was not signed by Judge Adam Caine at 1153 hours but was instead signed by Judge Margene Burnett of Division 7 on 10/18/22 at 1838 hours; more than two hours after the conclusion of the Search and Seizure of the Home and Property of Plaintiff occurred (See Exhibit #5 Copy of Search Warrant signed by Judge Burnett) and (See Exhibit #3 Supplementary Search Warrant Execution the time of the conclusion of the Search of the Premises and Seizure of Property)

37. The application of the Search Warrant that was signed by Judge Burnett was applied for by Defendant Detective Keller (Case# KC22070358) on 10/18/22 with a signed return by Detective Keller that same day.

38. From the Search Warrant Return provided to Plaintiff by Defendant Detective Keller there was never a Search Warrant in place, signed by a judge, allowing for the Individual Defendant Officers and KCPD personnel to legally enact a Search and Seizure of anything related to Plaintiff on the date and time that the Search occurred. This is in direct violation of Missouri State and Local rules and in violation of the KCPD's policy being "Procedural Instruction- subject State Search Warrant Procedures" regarding Searches and Search Warrants being "RSMo 542 and KCPD Policy PI-22-06". (See Exhibit #6 KCPD Policy State Search Warrant Policies and Procedures PI-22-06)

39. The Defendant Officers and other KCPD Officers and Tactical Unit Officers on their way over to Plaintiff's residence brought up the fact that the home had a pitbull in it as if to give a warning to other officers as if it would be a problem that day. (See Exhibit #7 Video and

Audio from KCPD vid tkj00260(01-000w) at 1:21) (See Exhibit #8 KCPD response to Plaintiff's Request for Audio and Video recording and Affidavit from KCPD records providing such)

40. Upon Arrival of Defendants on 10/18/22 the listed Defendants along with the other KCPD employees and tactical squad members yelled out to all persons to come to the door and open the door. The Defendant KCPD Officers then waited approximately 10 seconds before taking the front door down.

41. Officers asked how many person were in the home and Mr. Hirst while in custody stated there was four total. (See Exhibit #7 KCPD vid at 3:37)

42. All four occupants exited the home peacefully and without issue as Plaintiff was then requested per instructions given by Defendants to exit the home walking backwards toward the officers at the front door where she was taken into custody and zip tied while in her underwear and placed on the back bumper of a police vehicle. (See Exhibit#9 Audio/Video from KCPD tkj00422 (01-000w) at 3:32)

43. While Plaintiff was being detained and outside the house she made it known to an unknown KCPD officer that her Certified Therapy Dog named "Kilo" was in the house and he is friendly and to not hurt him. (See Exhibit# 10 Video/Audio from KCPD vid tkj00424 (01-000w) at 4:40, 6:28 and 9:02-to end)

44. While other persons were exiting the home and KCPD Tactical Officer who was stationed at the center of the front door yelled to all other KCPD officer that There was a Therapy/Service Dog in the house likely to the left where Plaintiff came from. (See Exhibit #7 at 4:50) (See Exhibit #11 Registered support animal card and paperwork Registration#

ES-2404691). (See Exhibit # 19 Letter from Doctor showing need for Plaintiff to have a certified emotional support animal)

45. Once all (4) known persons were out of the home the KCPD Officers and Tactical Unit Officers entered the home and in gaining access to the home and began executing their search of the home moving towards the right hallway and bedroom section of the home first. Where in one bedroom they encountered an all-black dog. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 4:08 through 7:04)

46. The Defendant Officers and other KCPD Officers and Tactical Unit Officers saw the dog was hiding in a far corner of a bedroom which had not been cleared and the dog failed to come out when called and was not easily accessible by the officers so the officers shut the door to discuss what to do with the dog and decided to let it calm down and come back to the situation after the rest of the Home was search and cleared. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 4:08 through 7:04)

47. Then through the outside communications The Defendant Officers and other KCPD Officers and Tactical Unit Officers learned the Plaintiff's therapy dog "Kilo" was in the garage and on the other side of the dining room door that lead to the garage. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 3:40-3:47 and 4:38 – 4:50)

48. The Defendant Officers and other KCPD Officers and Tactical Unit Officers began discussing how best to handle the getting the dog out of the home. There was a back door that could have been opened and would let the dog out into the fenced backyard. That option was not discussed instead the Defendant Officer and other KCPD personnel at the scene discussed the option of opening the door and "funneling" the dog though the living, or potentially opening the garage door from the outside and letting the dog run up to its

owner. Officers were told dogs were friendly. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 8:31 through 9:05)

49. The Defendant Officers and other KCPD Officers and Tactical Unit Officers had a dog pole with them used. The "dog pole" is the type that animal control has but they did not discuss using it on Kilo but did with the other all black dog. The officers did not discuss cracking open the door enough to let the dog pole in enough to lasso the dog but keeping it shut enough to keep the dog on the other side of the door. (See Exhibit #7 at 5:10 regarding dog pole) and (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 8:31 through 9:05). The Officers used a dog pole on the all black pitbull "Onyx" which was extracted from the home alive and was not killed.

50. An unknown KCPD Officer who was outside with Plaintiff assured her that the officers were aware of her dog and service animal and that no harm would come to her Service animal. (See Exhibit# 10 Video/Audio from KCPD vid tkj00424 (01-000w) at 4:40, 6:28 and 9:02-to end)

51. The Defendant Officers and other KCPD Officers and Tactical Unit Officers decided on moving in and having Defendants Officer Hall and Officer Truax at the door to go in. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 8:31 through 9:05)

52. Officer Hall whipped the door open and yelled "Back" once. In less than a second from finishing the word "back" Defendant Hall shot Kilo twice with his assault weapon. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 9:06 through 9:37) (See Exhibit #20 Photo of blood stained garage floor where Kilo was shot and killed).

53. Neither Officer Truax nor any other officer near the door jumped back in fear nor attempted to shoot the dog for being aggressive. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 9:06 through 9:37)

54. Plaintiff upon hearing the shots was horrified and became very disturbed mentally and emotionally causing her great trauma and PTSD from the event. (See Exhibit #13 KCPD Video/Audio vid tkj00424(01-001w) at :28 through 5:39)

55. Officer Truax has a history of shooting dogs that approach him in any fashion or block a path for a Tactical unit to clear a room and still chose to not fire at the Service Dog of Plaintiff being 2 year old "Kilo". (See Exhibit #14 KCPD Report# 19-16827 Truax shooting a pitbull previously for not being violent)

56. It is unlikely that any of the The Defendant Officers and other KCPD Officers and Tactical Unit Officers have any formal training in how to assess and handle pets dogs specifically and when they should be considered a danger and when the dog might be looking to simply go into its home from the garage when the door is opened and there is space for him to enter the home as in a prior deposition of Officer Truax stated that they are aware more Police Departments including the KCPD are talking about lawsuits for against officers for shooting dogs he nor the Tactical/Swat units don't get any specialized training regarding it and he believes the should get this training and that it would be beneficial. (See Exhibit# 15 Deposition of Truax from 2022 where he shot a non-violent dog)

57. Defendant Officer Hall and all other Individual Defendants and KCPD personnel on the scene violated KCPD "Firearms Policy Annex B(C)" regarding the policy that when an animal is shot and injured that it is the duty of the KCPD Officers involved to properly and humanely euthanize the animal. Officer Hal and all other Individual Defendants and

KCPD personnel at the scene allowed Kilo the Therapy dog to continue to cry and twitch and flail not being deceased for what can only be shown on video to be between 24 seconds to 1:42 seconds long. (See Exhibit #16 KCPD Firearms Procedure Policy and Annex A and Annex B) (See Exhibit #17 KCPD Video/Auio tkj00423 (01-001w) :54 through 2:23).

58. An Unknown KCPD Officer stated to Defendant Officer Hall that he "thinks he got him" (meaning the dog) and Officer Hall agrees and then unknown officer chuckles about the shooting (See Exhibit #7 Video and Audio from KCPD vid tkj00260(01-001w) at 6:56 through 7:00)

59. The Defendant Officers and other KCPD Officers and Tactical Unit Officers once the house was cleared and were outside stood in a circle near Plaintiff who was visibly upset about the shooting of her dog and the Officers began to laugh and joke making light of the situation (including doing anything without her pants on) which made the events all that much more disturbing to Plaintiff which caused her further mental and emotional issues. (See Exhibit #18 Video and Audio from KCPD vid tkj00260(01-002w) at 8:10 through 9:28).

60. Plaintiff was ultimately taken into custody and placed on a 24 hour hold where she was held at the KCPD and then released.

61. As a result of the Defendant's Search and Seizure on Plaintiff her residence and her three roommates no individuals were charged for any wrongdoings.

62. As a direct and consequent result of the incident at issue the Plaintiff suffered physical pain and actual physical injuries including a seizure during the 24 hour hold, mental pain and anguish, embarrassment, emotional distress, angst, PTSD and other non-economic injuries.

63. The acts of said The named Defendant Officers and other KCPD Officers and Tactical Unit Officers were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiff Amanda Bujnoch, thus entitling her to an award of punitive damages.

64. As a result of Defendants' unlawful actions and infringements of Plaintiff's protected rights, Ms. Bujnoch-Bowlin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

65. The Doctrine of Official Immunity does not apply in this Case because it does not protect public employees for torts committed when acting in a ministerial capacity and/or a Discretionary act will not be protected by official immunity if the conduct is willfully wrong or done in bad faith and with malice or corruption and is done recklessly, willfully and knowingly, as the acts done in this case fall into the above categories. Defendants including but not limited to the names Defendant Officers and other KCPD Officers and Tactical Unit Officers acted with malice when they wantonly did that which a man/officer of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another and was done in bad faith and was a conscious wrongdoing or breach of a known duty through some ulterior motive.

66. The Doctrine of Public Duty does not afford protection or immunity in this Case because that Doctrine is concerned with conduct towards the general public rather than the conduct towards a private individual and the conduct alleged and addressed here was done by The Defendant Officers and other KCPD Officers and Tactical Unit Officers and their agents acting in bad faith and with malice.

67. The Doctrine of Sovereign Immunity does not afford protection because Defendants and or the Kansas City, Missouri Board of Police Commissioners have procured applicable Liability Insurance or established a self-insurance plan, that insureds actions by their agents and Officers and further, the acts were by the Department were done out of a Proprietary Function for the special benefit and or profit of the municipality as a corporate entity and not as a governmental function for the common good of all and at times in violation of their own department policies with the intent to intimidate, harass, and exert power and control for no legitimate purpose. See Liability Insurance Exception RSMo 537.600 Section 2. listed below.

**537.600. Sovereign immunity in effect — exceptions. —** 2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

68. The Doctrines of Sovereign Immunity and Official Immunity do not afford protections to the Defendants because of the 2021 Missouri "Law Enforcement Bill of Rights" Employers/Police Departments would be required to "defend and indemnify law enforcement officers from and against civil claims made against them in their official and individual capacities if the alleged conduct arose in the course and scope of their obligations and duties as law enforcement officers."

69. The Defendants' interaction with the Plaintiff caused or contributed to cause Plaintiff mental and emotional anguish, severe emotional distress (requiring Counseling and medication and due to the severity manifesting itself into physical injurie and symptoms), PTSD suffering, loss of enjoyment of life and other non-economic damages. Further Plaintiff incurred psychological injury, and suffered pain and humiliation

70. The Plaintiff is entitled to attorney's fees and costs in accordance with the Civil Rights Act of 1964 (42 U.S.C. 1983 et. seq.)

## COUNT I

**( [42 U.S.C. § 1983](#) – WRONGFUL/UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF AMANDA BUJNOCH-BOWLIN**

**(Defendants Keller and Truax )**

70. Plaintiff Ms. Bujnoch-Bowlin re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 70 as if set forth fully herein.

71. As described herein, Defendants Keller and Truax Caron while acting under color of state law and acting alone and in concert with others, deprived Plaintiff of her rights privileges and immunities as secured by the Constitution of the United States of America in the Fourth and Fourteenth Amendments which protects Plaintiff against unreasonable searches and seizures by requiring the government to demonstrate probable cause and obtain a warrant and not unreasonable detain an individual or unlawfully seize property. Defendants violated Plaintiff's through their acts and omissions by including but not limited to the following

(a) By not timely seeking, a lawful knock and announce search warrant for the residence of Plaintiff which is required under state law and KCPD policies and procedures. (See Exhibit # 2,3,4,5 & 6). Defendant alleged that they had a valid Search Warrant but the search warrant provided to Plaintiff was signed by a different judge and at a time after the

search and seizure of property, killing of per Service Dog Kilo and the Detention of Plaintiff had occurred.

(b) While not having a signed search warrant in place describing with some particularity the kind or type of items that the law enforcement department is seeking and were still executing a search on the premises of Plaintiff.   The Defendants listed KCPD Officer and other KCP personnel and members of the tactical/SWAT squads fail either to request or at least failed to obtain the proper Search Warrant and still saw fit to direct the deployment of two KCPD Tactical Response Units to affect a highly invasive search of the premises. (See Exhibit # 2,3,4,5 & 6)

(c) Due to the failure to have a proper search warrant in place the officers through the execution of their search violated plaintiff's right to be free from unreasonable search and seizure and her right to privacy and Due Process of the laws in place by the State of Missouri and the KCPD Policies.  (See Exhibit #6) damaged the home she was residing in including the Front Door, windows furniture floor etc.

(d) By providing a Search Warrant Signed by a judge two hours after Plaintiff was detained and taken into custody too Plaintiff by leaving it on her counter while she was at the KCPD department going through a 24 hour hold process. Officers Traux and Keller deliberately tried to usurp the law and fool and lie to the Plaintiff to make their acts and/or omissions seem lawful. (See Exhibit #4)

(e) The Unlawful search and then seizure of property cause Plaintiff to lose personal property and have her residence damaged by the breaking down of her front door windows, flooring. (See Exhibits 2 and #5)

(f) The Unlawful search caused an interaction to occur between Plaintiff's Service Dog Kilo to have an interaction with SWAT/Tactical Team Officers and ultimately to have her certified service animal to be shot and killed by the KCPD officers executing the search.

(g) The Unlawful search cause Plaintiff to have to watch her residence get destroyed while be taken outside by KCPD officers in her underwear in front of all of her neighbors which embarrassed and humiliated Plaintiff.

72. As a direct and proximate result of the conduct of Individual Defendants Truax and Keller, Ms. Bujnoch has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kilo and his companionship; loss of important personal and damage to real property, great fear for her safety and that of her Certified Service dog; pain of the mind as well as the body (mental and emotional problems caused physical symptoms and injuries; fear, apprehension, depression, mental and emotional anguish and suffering, PTSD, anxiety, loss of enjoyment of life, loss of faith in his society, and consternation.

73. The acts of Defendants Truax and Keller were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Bujnoch-Bowlin, thus entitling her to an award of punitive damages against Defendants Truax and Keller.

74. As a result of Defendants Truax and Keller's unlawful actions and infringements of Plaintiff's protected rights, Ms. Bujnoch-Bowlin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Amanda Bujnoch-Bowlin respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendants Truax and Keller in their individual capacities and award him any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled for a sum greater than $75,000.00 and that which this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

**COUNT II**

**( 42 U.S.C. § 1983 – WRONGFUL/UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT AND THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF AMANDA BUJNOCH-BOWLIN**

**(Officers Truax and Hall)**

75. Ms. Bujnoch-Bowlon re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 74 as if set forth fully herein.

76. As described herein, Defendants Hall and Truax while acting under color of state law and acting alone and in concert with others, deprived Ms. Bujnoch of her rights privileges and immunities as secured by the Constitution of the United States of America, under the Fourth and Fourteenth Amendments by their acts and omissions including but not limited to:

(a) unlawfully and unreasonably executing an unlawful search warrant on Ms. Bujnoch Bowlin's home which resulted in the shooting and killing of Lilo, Plaintiff's family pet and more importantly her certified service animal which was necessary according to her medical care providers. (See Exhibits #11 & #19)  Plaintiff is owner and caregiver to Kilo and this wrongful and unlawful killing of her Certified Service Animal is a violation of

her Constitutional Rights as an illegal Seizure under the Fourth and Fourteenth Amendments.

(b) The Defendant Officers and other KCPD Officers and Tactical Unit Officers on their way over to Plaintiff's residence brought up the fact that the home had a pitbull in it as if to give a warning to other officers as if it would be a problem that day. (See Exhibit #7 Video and Audio from KCPD vid tkj00260(01-000w) at 1:21) (See Exhibit #8 KCPD response to Plaintiff's Request for Audio and Video recording and Affidavit from KCPD records providing such)

(c) While Plaintiff was being detained and outside the house she made it known to an unknown KCPD officer that her Certified Therapy Dog named "Kilo" was in the house and he is friendly and to not hurt him. (See Exhibit# 10 Video/Audio from KCPD vid tkj00424 (01-000w) at 4:40, 6:28 and 9:02-to end)

(d) While other persons were exiting the home and KCPD Tactical Officer who was stationed at the center of the front door yelled to all other KCPD officer that There was a Therapy/Service Dog in the house likely to the left where Plaintiff came from. (See Exhibit #7 at 4:50) (See Exhibit #11 Registered support animal card and paperwork Registration# ES-2404691). (See Exhibit # 19 Letter from Doctor showing need for Plaintiff to have a certified emotional support animal)

(e) Once all (4) known persons were out of the home the KCPD Officers and Tactical Unit Officers entered the home and in gaining access to the home and began executing their search of the home moving towards the right hallway and bedroom section of the home first. Where in one bedroom they encountered an all-black dog. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 4:08 through 7:04)

(f) The Defendant Officers and other KCPD Officers and Tactical Unit Officers saw the dog was hiding in a far corner of a bedroom which had not been cleared and the dog failed to come out when called and was not easily accessible by the officers so the officers shut the door to discuss what to do with the dog and decided to let it calm down and come back to the situation after the rest of the Home was search and cleared. *This shows the that the KCPD and its officer do not have a standard or policy in place that provides for continuity in the treatment of dogs, as the two dogs in this were treated completely different as a dog pole was used on the other all black pitbull while Plaintiff's Certified Service Dog Kilo was shot and killed.* (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 4:08 through 7:04)

**(g)** Through the outside communications The Defendant Officers and other KCPD Officers and Tactical Unit Officers learned the Plaintiff's therapy dog "Kilo" was in the garage and on the other side of the dining room door that lead to the garage. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 3:40-3:47 and 4:38 – 4:50)

**(h)** The Defendant Officers and other KCPD Officers and Tactical Unit Officers began discussing how best to handle the getting the dog out of the home. There was a back door that could have been opened and would let the dog out into the fenced backyard. That option was not discussed instead the Defendant Officer and other KCPD personnel at the scene discussed the option of opening the door and "funneling" the dog though the living, or potentially opening the garage door from the outside and letting the dog run up to its owner. Officers were told dogs were friendly. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 8:31 through 9:05)

(i) The Defendant Officers and other KCPD Officers and Tactical Unit Officers had a dog pole with them used. The "dog pole" is the type animal control has but did not discuss using it on Kilo but did with the other all black dog. The officers did not discuss cracking open the door enough to let the dog pole in enough to lasso the dog but keeping it shut enough to keep the dog on the other side of the door. (See Exhibit #7 at 5:10 regarding dog pole) and (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 8:31 through 9:05)

**(j)** An unknown KCPD Officer who was outside with Plaintiff assured her that the officers were aware of her dog and service animal and that no harm would come to her Service animal. (See Exhibit# 10 Video/Audio from KCPD vid tkj00424 (01-000w) at 4:40, 6:28 and 9:02-to end)

**(k)** The Defendant Officers and other KCPD Officers and Tactical Unit Officers decided on moving in and having Defendants Officer Hall and Officer Truax at the door to go in. Officer Truax had situational and supervisory authority over the Tactical Units on that search that day. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 8:31 through 9:05)

**(l)** Officer Hall whipped the door open and yelled "Back" once. In less than a second from finishing the word "back" Defendant Hall shot Kilo twice with his assault weapon. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 9:06 through 9:37)

**(m)** Neither Officer Truax nor any other officer near the door jumped back in fear nor attempted to shoot the dog for being aggressive. (See Exhibit# 12 Video/Audio from KCPD vid tkj00262 (01-000w) at 9:06 through 9:37)

(n) Plaintiff upon hearing the shots was horrified and became very disturbed mentally and emotionally causing her great trauma and PTSD from the event. (See Exhibit #13 KCPD Video/Audio vid tkj00424(01-001w) at :28 through 5:39)

(o) Officer Truax has a history of shooting dogs that approach him in any fashion or block a path for a Tactical unit to clear a room and still chose to not fire at the Service Dog of Plaintiff being 2 year old "Kilo". (See Exhibit #14 KCPD Report# 19-16827 Truax shooting a pitbull previously for not being violent)

**(p)** It is unlikely that any of the The Defendant Officers and other KCPD Officers and Tactical Unit Officers have any formal training in how to assess and handle pets dogs specifically and when they should be considered a danger and when the dog might be looking to simply go into its home from the garage when the door is opened and there is space for him to enter the home as in a prior deposition of Officer Truax stated that they are aware more Police Departments including the KCPD are talking about lawsuits for against officers for shooting dogs he nor the Tactical/Swat units don't get any specialized training regarding it and he believes the should get this training and that it would be beneficial. (See Exhibit# 15 Deposition of Truax from 2022 where he shot a non-violent dog)

**(q)** Defendant Officer Hall and all other Individual Defendants and KCPD personnel on the scene violated KCPD "Firearms Policy Annex B(C)" regarding the policy that when an animal is shot and injured that it is the duty of the KCPD Officers involved to properly and humanely euthanize the animal. Officer Hal and all other Individual Defendants and KCPD personnel at the scene allowed Kilo the Therapy dog to continue to cry and twitch and flail not being deceased for what can only be shown on video to

be between 24 seconds to 1:42 seconds long. (See Exhibit #16 KCPD Firearms Procedure Policy and Annex A and Annex B) (See Exhibit #17 KCPD Video/Auio tkj00423 (01-001w) :54 through 2:23).

**(r)** Unknown KCPD Officer states to Defendant Officer Hall that he thinks he got him meaning the dog and Officer Hall agrees and then unknown officer chuckles about the shooting (See Exhibit #7 Video and Audio from KCPD vid tkj00260(01-001w) at 6:56 through 7:00)

(s) The Defendant Officers and other KCPD Officers and Tactical Unit Officers once the house was cleared and were outside stood in a circle near Plaintiff who was visibly upset about the shooting of her dog and the Officers began to laugh and joke making light of the situation (including doing anything without her pants on) which made the events all that much more disturbing to Plaintiff which caused her further mental and emotional issues. (See Exhibit #18 Video and Audio from KCPD vid tkj00260(01-002w) at 8:10 through 9:28).

77. Defendants Truax and Hall did not look to find, mitigate or utilize non-life threatening force on Plaintiff's dog Kilo where had they attempted to do so with the other do in the same location and search by using a dog pole. Further the dog could have been let out in the yard or out of the garage.

78. The dog had not acted aggressively towards the officers base on the facts and therefore they officers had no right to shoot the animal.

79. Once Kilo was shot none of the officers on the scene made sure to not allow the animal to suffer per their own (Firearm Euthanizing policies) by putting the animal down. IN fact

the animal suffered and kicked and cried for at time frame of 24 second to over a minute. (See Exhibit #17 KCPD Video/Audio tkj00423 (01-001w) :54 through 2:23).

80. Officer Hall shot the dog when no other officer went to do so or felt threatened by the Kilo to take such a serious and ultimate life ending act. This was not a deescalation nor a thoughtful attempt to figure how to get the dog safely out of the home as they did for the other dog this was an unlawful killing.

81. Officer Truax has shot and killed pitbulls before while with the KCPD and has stated no classes which he feels are warranted and he would take on dealing with dogs they encounter are provided to their Tactical/Swat teams. (See Exhibit #14)

82. The failing to properly develop any non-lethal plan for confronting any animals that they knew and/or should have known to likely be present in the residence.

84. The Defendants Hall and Truax violated KCPD Discharge of Firearms Policy Annex B(2)(a) by intentionally destroying an animal that was not endangering the safety of other and was not recognized as being any danger or showing any dangerous propensities or actions to the Defendant Officers/Department Members at the scene of the search per there Supplemental Incident Report as well as having animal control the improper agency come out and dispose of the animal carcass and therein destroying evidence of the wrongful shooting (See Exhibit #16 and #3).

85. Plaintiff is owner and caregiver to Kilo and this wrongful and unlawful killing of her Certified Service Animal is a violation of her Constitutional Rights as an illegal Seizure under the Fourth and Fourteenth Amendments.

86. As a direct and proximate result of the conduct of Defendants Hall and Truax, Ms. Bujnoch-Bowlin has suffered injuries and damages, including but limited to: infringements

and deprivations of her constitutional rights; loss of Kilo loss of important personal and damage to real property, great fear for her safety and that of her Certified Service dog; pain of the mind as well as the body (mental and emotional problems which caused physical symptoms and physical injuries); fear, apprehension, depression, mental and emotional anguish and suffering, PTSD, anxiety, loss of enjoyment of life, loss of faith in his society, and consternation.

87. The acts of Defendants Truax and Keller were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Bujnoch-Bowlin, thus entitling her to an award of punitive damages against Defendants Truax and Keller.

88. As a result of Defendants Truax and Keller's unlawful actions and infringements of Plaintiff's protected rights, Ms. Bujnoch-Bowlin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

89. As a result of Defendant Caron's unlawful actions and infringements of Plaintiff's protected rights, Ms. Bujnoch-Bowlin has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Amanda Bujnoch-Bowlin respectfully prays that this Court enter judgment in his favor under 42 U.S.C. §§ 1983 and 1988 against Defendants Hall and Carter Truax and in their individual capacities and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled for a sum greater than $75,000.00 and for that which this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT III

**( <u>42 U.S.C. § 1983</u> – WRONGFUL/UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF (AMANDA BUJNOCH-BOWLIN)**

**(Kansas City Board of Police Commissioners and their member in their Individual Capacities)**

90. Plaintiff incorporates and adopts by reference the allegations contained in paragraphs 1 through 89 above. The actions described above as being performed under the color of State law and causing deprivation of rights and privileges secured by the Constitution and law of the United States and of Missouri constitute violations of <u>42 U.S.C. § 1983</u>.

91. The actions of the individual Officer Defendants violated Plaintiff's Fourteenth Amendment Right to be free from an unlawful arrest and detention. Defendants had no right nor probable cause to arrest, detain or use any force against Plainiff.

92. The Individual Officer Defendants' failed to understand and follow the laws and their own polices and procedures because they entered a residence without a warrant, detained the Plaintiff without cause and killed her dog for no reason. The Board was and is vicariously liable for their conduct and failed to enforce their own policies and procedures.

93. The Defendants' actions and omissions were intentional, wrongful and/or reckless with a complete disregard to Mrs. Bujnoch's rights and physical well-being and resulted in the unlawful arrest, detention, restraint of Ms. Bujnoch's freedoms against her will and without legal justification or probable cause and therefore constitute a violation of the Fourteenth Amendments to the United States Constitution.

94. As a direct and proximate result of the unlawful and malicious physical conduct by the individual Officer Defendants, which was committed under the color of state law and pursuant to their individual and official authority capacities as a law enforcement officers, Plaintiff Bujnoch suffered physical injuries and real damages.

95. Ms. Bujnoch is entitled to actual damages against all of the named Defendants based upon the facts alleged herein. The deprivation of Plaintiff's constitutional rights was magnified by her associated loss of freedom, physical injuries pain and suffering, mental and emotional anguish and humiliation, embarrassment, anxiety, fright, loss of dignity, nervousness, and other non-economic injuries, the exact nature and extent of which is not presently known.

96.     Plaintiff is entitled to exemplary damages against the Defendants acting in their individual, official and professional capacities based upon the facts alleged herein. All of the acts of Defendants were willful, wanton, reckless and malicious and demonstrate a total and deliberate indifference to, and conscious disregard for, the safety and rights of Ms. Bujnoch.

WHEREFORE, Plaintiff prays that judgment be entered against Defendants in an amount above $75,000.00 or to be determined at trial, which includes compensatory damages, actual damages, punitive damages, for costs of this action, attorney fees pursuant to 42 U.S.C. § 1983 and for such further relief as the Court deems just and proper.

### COUNT IV- Intentional Infliction of Emotional Distress (State Claim)

### (All named Defendants)

97. Plaintiff incorporates Paragraphs 1 through 96 of this Complaint, together with all sub-paragraphs, herein by reference as if fully set forth herein.

98. Defendants caused Plaintiff to suffer severe emotional distress and are legally responsible

for Plaintiff's damages.

99. Plaintiff Bujnoch-Bowlin suffered severe emotional distress.

100.     The Defendants' actions, as alleged herein, were done knowingly intentionally and/or recklessly and they were acting in bad faith and with malice.

101.     The Defendants' actions, as alleged herein, were extreme and outrageous and at times were done to retaliate, hurt, demean, humiliate, punish, and cause anxiety and fear Plaintiff, and it can clearly be seen to have in fact been intentionally done by Defendants' to case Plaintiff severe emotional distress.

102.     It was expected/foreseeable/predictable that Defendants' outrageous actions and conduct would cause Plaintiff suffer severe emotional distress.

103.     As a direct and consequential result Defendants' actions and conduct, as alleged herein, caused severe emotional distress and anxiety to the Plaintiff which manifested/resulted into physical injuries and physical symptoms and humiliation and non-economic loss.

104.     Plaintiff per the Missouri Statutes Annotated anticipates filing a motion for leave to file an amended petition seeking punitive damages with respect to this count once discovery has progressed.

WHEREFORE Plaintiff prays for judgment against Defendants and judgment in Plaintiff's favor on this Count IV in a sum in excess of $75,000 and for such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL OF ALL ISSUES

Plaintiff demands a jury trial on all issues in this matter.

Respectfully Submitted,

*/s/Mark E. Meyer*

_____

Mark E. Meyer #51786
The Law Offices of Mark E. Meyer, L.L.C.
2528 SW Wintercreek Dr.
Lee's Summit, MO 64081
(816) 729-0866 Phone
meyerlaw78@yahoo.com

**Co-Counsel for Plaintiff**

And

By:/s/ *Edward A. Stump*

Edward A. Stump # 57120
The Law Offices of Edward A. Stump, LLC
P.O. Box 412602
Kansas City, MO 64141
Phone: (816) 214-5810
Fax: (816) 561-935
Email: law.offices.edstump@gmail.com

CO-COUNSEL FOR PLAINTIFF